**Herbert R. BENNETT, Plaintiff,**

v.

**RICHARDSON–MERRELL, INC., a corporation, Defendant.**

**Civ. No. 64–9.**

United States District Court
E. D. Illinois.

June 29, 1964.

---

6. Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37, 41–42 (1956).

7. Hoover Co. v. Coe, 325 U.S. 79, 65 S.Ct. 955, 89 L.Ed. 1488 (1945).

Wham & Wham, Centralia, Ill., for plaintiff.

John E. Jacobsen, Craig & Craig, Mount Vernon, Ill., Jack E. Horsley, Craig & Craig, Mattoon, Ill., Forrest L. Tozer, Lord, Bissell & Brook, Chicago, Ill., for defendant.

JUERGENS, District Judge.

In this diversity suit the complaint alleges that the defendant is a manufacturer and distributor of drugs for human consumption to alleviate, cure, prevent or correct physical ailments; that among the various products which the defendant produced and marketed was a drug known and described by its copyright name of Mer/29, being a drug intended for human consumption for the purpose of lowering the cholesterol level in the blood.

The complaint further alleges that during or near the month of November 1960 a medical doctor (whom the complaint names), in his capacity as treating physician, prescribed Mer/29 for the purpose of lowering the cholesterol level in plaintiff's blood and that from November 1960 through February 1962 plaintiff consumed the drug pursuant to the directions and prescriptions of his physician.

The complaint then alleges that Mer/29 was expressly represented by the defendant as suitable for human consumption and reasonably fit for the purpose intended; that, in addition, there was an implied warranty that the drug so manufactured, sold and put upon the market by the defendant was reasonably fit for the purpose intended and was not a substance which would cause injury to persons consuming same under the direction of a physician; that the plaintiff relied upon the warranties; and that on April 16, 1962 the defendant withdrew the drug from the market.

The complaint further alleges that, unknown to the plaintiff and in violation of the warranties, the drug contained dangerous and harmful substances which caused the formation of cataracts in the eyes of the person consuming it and that the defendant was negligent in the manufacture and placing Mer/29 upon the market.

The complaint finally alleges that, as a direct and proximate result of such breach of warranties and negligence, cataracts formed in both eyes of the plaintiff as the result of consuming Mer/29.

The defendant has filed its motion to dismiss the complaint; the most salient points being that (1) privity between plaintiff and defendant is essential to an action for breach of warranty—and none has been alleged; (2) plaintiff failed to comply with the Illinois Sales Act, Section 49, Chapter 121½, Illinois Revised Statutes, by giving notice to "seller" of alleged breach of warranty; and (3) the plaintiff's charge that the defendant was negligent in the manufacture and placing the drug on the market should be made more definite and certain.

I

PRIVITY BETWEEN THE PLAINTIFF AND DEFENDANT

Privity of contract has been a continuing embarrassment for those who employ the traditional implied warranty

152

concept in favor of a remote consumer. The field of implied warranty has been in a state of confusion but appears to be stabilizing itself. The liberal trend is toward allowing recovery from a manufacturer for breach of warranty under factual situations where once the rigid rule of caveat emptor applied.

■ In this diversity suit we are limited to ascertaining and applying the law of Illinois as the same has been promulgated and chartered for us by the Supreme Court of the State of Illinois; if such court has not expressed itself upon the matter, then what the Supreme Court of Illinois would declare the law to be if it had this case before it.

In Patargias v. Coca-Cola Bottling Co. of Chicago, 332 Ill.App. 117, 74 N.E.2d 162 (1947), the plaintiff drank the greater part of a bottle of Coca-Cola that had a mouse in it. She became ill. The court in its opinion said that so far as it had been able to determine the precise question as to whether the law imposes on manufacturers of food sold in sealed containers an implied warranty to the ultimate purchasers thereof that such articles of food are fit for human consumption "has not heretofore been considered or determined by the Supreme Court of this state."

It then analyzed the case of Davis v. Van Camp Packing Co., 189 Iowa 775, 176 N.W. 382, 17 A.L.R. 649, and held that:

"* * * where an article of food or drink is sold in a sealed container for human consumption, public policy demands that an implied warranty be imposed upon the manufacturer thereof that such article is wholesome and fit for use, that said warranty runs with the sale of the article for the benefit of the consumer thereof and that plaintiff had the right to maintain this action against the defendant on its implied warranty as the manufacturer of the Coca-Cola, which she purchased, that it was wholesome and fit for human consumption."

In Patargias the court approved the language of Davis and Jacob E. Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479, to the effect that the question as to privity is not controlling.

In Tiffin v. Great Atlantic and Pacific Tea Company, 18 Ill.2d 48, 162 N.E.2d 406 (1959), the plaintiff contended that Armour, as the manufacturer, and A & P, as the retailer, both impliedly warranted to the ultimate consumer that the ham was not only fit for human consumption when purchased by Clara T. Tiffin but also that it contained no bacteria which would cause contamination when later used for the purpose for which it was bought. The court was not required to pass squarely on the implied warranty question as is noted when it said: "* * *, it is unnecessary for us at this time to decide whether the implied warranty extended to the limits urged by them. * * *"

But the court did say in Tiffin that:

"By furnishing food to the general public, the manufacturer and retailer both impliedly warrant that the product is fit for human consumption at the time it leaves their respective control, and where the food proves to be deleterious, either or both may be required to respond in damages to the injured consumer. * * *"

The court then states exceptions to this general rule, none of which affects us in the case at bar.

The cases cited by the defendant are no authority for the position it takes on the question of privity or are distinguishable from this case. As an example, Albin v. Illinois Crop Improvement Ass'n, Inc., 30 Ill.App.2d 283, 174 N.E.2d 697 (1961), was an action against the issuer of a tag certifying the quality and purity of seed. Generally, an action on express warranty in the nature of "ex contractu" cannot be maintained unless there is privity of contract between the warrantor and the person seeking recovery. The court held that there was

no express warranty and no direct contractual relationship between the plaintiff and the defendant Crop Association. Generally from this line of cases it may reasonably be stated that under Illinois law the manufacturer was not responsible in damages to a person with whom it has no contractual relationship and is not in privity, because of alleged manufacture of a product, unless the product is inherently dangerous or its nature is such that it may become inherently dangerous if manufactured negligently.

But there are exceptions to this rule such as fraudulent or deceitful statements or misrepresentations, implied warranties of fitness for human consumption of foods, where it is determined that privity between the parties is not necessary for breach of implied warranty.

It would not change our conclusion on the question of privity by discussing the other cases cited in defendant's brief.

■ It is fair to assume from the Illinois cases that the trend, particularly in products for human consumption or human use or application, is away from the privity requirement in actions by the ultimate consumer against a manufacturer for breach of implied warranty of fitness.

It is also fair to assume that through advertising or other media of education and information defendant has convinced and persuaded the medical profession to prescribe its drug, since it is in the very competitive field of supplying drugs and medicines for the alleviation of human suffering as well as for its own pecuniary advantages.

From the position taken it is not to be assumed that the onerous burden of absolute liability is being imposed upon the drug manufacturers as defendant alleges, since it must be kept in mind that it would only be fair and just that cases of this nature must be decided on the facts and circumstances as they existed in the light of the knowledge at the time the drugs were offered to the public.

Defendant's position on the question of privity is not tenable.

## II

## TO RECOVER IN AN ACTION FOR BREACH OF WARRANTY, THE BUYER MUST HAVE GIVEN NOTICE OF THE ALLEGED BREACH TO THE SELLER

Section 49, Chapter 121½, Illinois Revised Statutes (1959), provides as follows:

"* * * if, *after acceptance* of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor." (Emphasis supplied.)

This section lays down no specific standard for testing the sufficiency of a notice, but the nature of the case and its particular facts have an important bearing.

In view of the fact that defects of quality of Mer/29 would not become apparent until actual use was made of it by a human body, and even then perhaps not until lapse of time known only to scientific and medical men, the question of notice becomes one of relative importance, and the time that notice was given, if at all, is relative and a hard and fast rule cannot be laid down.

A defect in quality of Mer/29 would not become apparent to the plaintiff until he made actual use of the drug and sufficient time had elapsed within which to show the after-effects, side-effects or injury that the taking of the drug would cause.

■ No case has been cited to the Court nor has it been able to find a case which is in the remotest parallel to the facts here presented, which has held that Section 49 is controlling under similar facts. Each case cited by defendant in support of its position that Section 49 controls is vastly different on the facts from the case here under consideration. Where as here plaintiff alleges a cause of action against the manufacturer of a product intended for human consumption

purchased from an intermediate handler of the product and resulting in damage to the ultimate consumer, the Court does not believe that Section 49 of the Sales Act, Chapter 121½, Illinois Revised Statutes, is meant to control and does not believe that the section cited requires the giving of notice by an ultimate consumer to the manufacturer before an action may be maintained on the implied warranty of fitness for human consumption

### III

### MOTION FOR A MORE DEFINITE STATEMENT

■ Suffice it to say that a motion for more definite statement should be granted only where the pleadings are so vague or ambiguous that the defendant cannot reasonably be expected to reply thereto. Such is not the case here.

■ The defendant may obtain the information it seeks by resorting to the appropriate discovery procedures which are provided by the Federal Rules of Civil Procedure. Factual details are more properly ascertained by appropriate discovery procedure. Asher v. Ruppa, 7th Cir., 173 F.2d 10.

Defendant asserts that the complaint fails to state a cause of action and fails to allege sufficient facts to charge the defendant with liability; that there are no facts alleged sufficient in law to charge the defendant with negligence in manufacturing and marketing the drug described in the complaint and the allegation of negligence consists entirely of conclusions of the pleader.

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. All the rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

■ The Court finds that the defendant's motion to dismiss and its alternative motion to strike and its alternative motion for more definite statement should be denied.

It is, therefore, the order of this Court that the defendant's motion to dismiss, its alternative motion to strike and its alternative motion for more definite statement be and the same are hereby denied.